Argued October 28, decided November 11, 1913.

# STANCHFIELD WAREHOUSE CO. *v*. CENTRAL R. OF OREGON.*

### (136 Pac. 34.)

**Pleading—Waiver of Objections by Pleading Over.**

1.  A demurrer to an answer was abandoned, and any error in overruling it waived, by filing a reply to the new matter contained in the answer.

**Pleading—Waiver of Objections by Pleading Over.**

2.  Plaintiff, by pleading over after a demurrer to the answer was overruled, did not waive the objection that the answer did not state facts sufficient to constitute a defense, and such objection could be raised at any time during the trial or on appeal.

**Carriers—Actions for Misdelivery—Evidence.**

3.  In an action against a carrier for misdelivery of a shipment of cement consigned by the shipper to itself, where there was evidence that the shipper, after learning of the misdelivery, waited more than three months before making any complaint to the carrier, evidence that it charged the cement on its books to the party to whom the carrier delivered it, and endeavored to collect the value thereof from such party, was admissible as tending to prove a sale of the cement by the shipper, and as tending to show that it approved or ratified the delivery by the carrier.

**Carriers—Actions for Misdelivery—Evidence.**

4.  In an action against a carrier for misdelivery of a shipment of cement which the shipper consigned to itself, and in which the carrier claimed that the shipper had ratified such delivery, a check by which the party to whom the shipment was delivered paid the freight thereon was properly admitted to support the carrier's contention.

[As to whom delivery may be made by carrier, and liability for delivery to wrong person, see note in 9 Am. St. Rep. 511.]

**Appeal and Error—Harmless Error—Admission of Evidence.**

5.  The admission of such check, if error, could not have injured the shipper.

**Carriers—Actions for Misdelivery—Instructions.**

6.  In a shipper's action for misdelivery of a shipment of cement consigned to itself, where the carrier pleaded, and there was evidence tending to show, that the shipper had sold the cement to M., D. & Co.; that the carrier delivered it to such company, who receipted therefor in the name of the shipper; that the shipper charged it on its books to

*On the question to whom delivery may be made under bill of lading, see note in 38 L. R. A. 358.    REPORTER.

M., D. & Co., sent a bill and statement of the sale to such company, and made no objection to the delivery for more than three months, and thereby ratified the delivery—instructions that it was the duty of a common carrier to deliver the goods only to the consignee named in the bill of lading, or someone authorized by him to receive them, and not to deliver them without the production of the bill of lading; that if the carrier delivered the cement to M., D. & Co. without the production of the bill of lading, and without the shipper's consent or direction, and if the shipper did not, subsequent to such delivery, ratify it, and if the shipper was the owner of the cement, to find for plaintiff; that if the shipper expressly or impliedly consented to the delivery, or after the delivery ratified and approved thereof, to find for the carrier; that if the cement was delivered to M., D. & Co., and the shipper immediately or shortly thereafter had notice and knowledge thereof, and thereupon charged it to M., D. & Co., and wrote them admitting and stating that they had shipped it to that company, and never made any claim against the carrier for wrongful delivery until three months later; and if the shipper intended to release the carrier from liability for the misdelivery, and take M., D. & Co. for payment, to find for the carrier—were correct as applied to the facts of the case.

#### Carriers—Actions for Misdelivery—Burden of Proof.

7. The consignee of goods is *prima facie* entitled to have them delivered to him, and there is a disputable presumption that they belong to him, and the burden is therefore on the carrier delivering them to a person other than the consignee or lawful holder of the bill of lading to show that such person is the true owner.

#### Carriers—To Whom Delivery may be Made.

8. A carrier of goods is always justified in delivering them to their true owner, though not the consignee or lawful holder of the bill of lading.

#### Carriers—Actions for Misdelivery—Burden of Proof.

9. A carrier which delivered a shipment consigned by the shipper to itself, to another party, who did not produce the bill of lading, had the burden of showing that, with knowledge of such delivery, the shipper ratified it.

#### Carriers—Misdelivery of Goods—Ratification.

10. Ratification may be shown by express words, or it may be implied from words, acts, or silence.

#### Carriers—Liability for Misdelivery—Ratification.

11. A shipper of goods consigned to itself, which consented to or authorized a delivery by the carrier to another, or ratified such delivery with knowledge that it had been made, could not sue the carrier for the misdelivery.

#### Trial—Instructions—Cure of Errors.

12. In a shipper's action for misdelivery of a shipment of cement, the failure of an instruction that the shipper had a right to consign the shipment to itself, and that the carrier had no right to deliver it to another unless the shipper authorized such delivery, to state

that, if the shipper ratified the delivery with knowledge that it had been made, such ratification would relate back to the delivery and validate it, could not have misled the jury where this fact was explicitly stated in other instructions, especially where the jury found for the carrier.

**Trial—Instructions—Cure by Other Instructions.**

13. An instruction, faulty by reason of the omission of some essential matters, may be cured by other instructions which set forth the omitted matters.

From Union: JOHN W. KNOWLES, Judge.

En Banc.    Statement by MR. JUSTICE RAMSEY.

This is an action by the W. H. Stanchfield Warehouse Company against the Central Railroad of Oregon for the recovery of $349.80 damages for the nondelivery to the plaintiff of 424 sacks of Portland cement.    Verdict and judgment were rendered for the defendant.    The plaintiff appeals.    AFFIRMED.

For appellant there was a brief, with oral arguments by *Mr. R. J. Green* and *Mr. Eugene Ashwill.*

For respondent there was a brief, with oral arguments by *Mr. L. Z. Terrell* and *Messrs. Crawford & Eakin.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

On the 21st day of August, 1912, the plaintiff shipped from La Grande to Union, Oregon, a distance of less than 20 miles, over the Oregon-Washington Railroad & Navigation Company, and the defendant, 424 sacks of Portland cement.    The first-named company carried said cement from La Grande to Union station, and the defendant received it at that point and carried it to the town of Union, its final destination.    This cement was consigned by the plaintiff to itself at Union, and the bill of lading was issued by the

Oregon-Washington Railroad & Navigation Company to the plaintiff. No other bill of lading was issued.

The defendant on the 28th day of August, 1912, delivered said cement at Union to Mack, Duke & Co., and they receipted for it for the plaintiff. The defendant did not notify the plaintiff of the arrival of said cement at Union. On December 7, 1912, the plaintiff, at Union, presented to the defendant said bill of lading and demanded of the defendant the delivery of said cement to it, but the defendant failed to deliver to the plaintiff said cement or any part thereof, having previously delivered it to said Mack, Duke & Co. The plaintiff did not demand the delivery of said cement until December 7, 1912. The freight on said cement was paid by said Mack, Duke & Co. when it was delivered to them.

The amended complaint demands judgment for $349.80 damages for the failure of the defendant to deliver said cement to the plaintiff. The answer admits portions of the amended complaint and denies other parts thereof, and then sets up affirmative matter. The plaintiff demurred to the new matter of the answer, alleging that it does not state facts sufficient to constitute an estoppel or a defense. This demurrer was overruled, and the plaintiff replied, denying parts of the new matter of the answer.

The pleadings admit that the plaintiff shipped the 424 sacks of cement to Union, on August 21, 1912, consigned to the plaintiff. The answer alleges that the plaintiff on August 21, 1912, sold and shipped said cement to Mack, Duke & Co. at Union, and that the defendant received said shipment of cement and delivered it to said Mack, Duke & Co. at Union, on August 28, 1912, by direction of the plaintiff, and that the plaintiff immediately charged said cement to said Mack, Duke & Co., and that plaintiff sent a bill and

statement to them, showing that said cement was charged to them. The answer claims, also, that the plaintiff, after learning that said cement had been by the defendant delivered to Mack, Duke & Co., fully ratified said delivery, and that said Mack, Duke & Co., with the knowledge and consent of the plaintiff, used up all of said cement in making sidewalks and other structures, etc.

The appellant assigns various alleged errors for which it asks a reversal of the judgment of the trial court.

1. The first point made is that the court below erred in overruling the plaintiff's demurrer to the amended answer. The plaintiff, after said demurrer was overruled, filed a reply to the new matter contained in the said answer. This precludes our examining said first assignment of error. Error in overruling a demurrer is waived by pleading over: *Huffman* v. *McDaniel,* 1 Or. 261; *Richards* v. *Fanning,* 5 Or. 358; *Wells* v. *Applegate,* 12 Or. 209 (6 Pac. 770); *Young* v. *Martin,* 8 Wall. (U. S.) 357 (19 L. Ed. 418); *Olds* v. *Cary,* 13 Or. 365 (10 Pac. 786). In *Young* v. *Martin,* 8 Wall. (U. S.) 357 (19 L. Ed. 418), where a demurrer to an answer was overruled and the plaintiff filed a reply, the court says: "Nor is any order overruling the demurrer shown; a statement of the clerk in his entries that such was the fact is all that appears. But, independent of this consideration, the ruling of the court on this point would not be noticed, for it appears that the plaintiffs, instead of relying upon the sufficiency of the alleged demurrer, filed a replication to the answer. They thus abandoned their demurrer and it ceased to be a part of the record." In *Wells* v. *Applegate,* 12 Or. 209 (6 Pac. 770), the court says: "Then the rule is, when a demurrer is overruled and the party pleads over, the demurrer is abandoned, and

it ceases to be a part of the record.'' When the plaintiff filed a reply to the answer, after the demurrer thereto was overruled, it abandoned or waived the demurrer and it ceased to be a part of the record.

2. However, while pleading over, after a demurrer is overruled, waives the demurrer, the point that an answer does not state facts sufficient to constitute a defense can be raised at any time during the trial, or upon the appeal, because that point is never waived and can be raised without a demurrer.

3-5. The appellant contends that the trial court erred in admitting in evidence defendant's exhibits 1, 2, 3, 4, and 6. Exhibit 1 is a slip or filing made out by the plaintiff and kept by it, on which it charged said cement to Frank Mack. It is dated August 21, 1912, and it charges Frank Mack with ''106 barrels cement, $349.80.'' This slip was identified by W. H. Stanchfield, manager of the plaintiff, and he stated that the plaintiff charged the cement to Frank Mack after the company learned that the defendant had delivered it to Mack, Duke & Co., Frank Mack being one of said firm. Mr. Stanchfield says that they did not learn that said cement had been delivered to Mack, Duke & Co. until some time after it had been shipped from La Grande.

Defendant's exhibit 2 is a statement of account made by the plaintiff and sent by it to Mack, Duke & Co., and dated September 1, 1912, in which the plaintiff charged Mack, Duke & Co. with 106 barrels of cement, $349.80. The cement referred to in said exhibit is admitted by the manager of the plaintiff to be the same cement referred to in the amended complaint, and which is the basis of this action, and, while said account is dated September 1, 1912, the charge of 106 barrels of cement, $349.80, is dated August 21, 1912.

Defendant's exhibit 3 was identified by the manager of the plaintiff as a letter written by him September 16,

1912, to said Mack, Duke & Co., concerning the carload of cement which is the basis of this action. In this letter the plaintiff expresses disappointment that Mack, Duke & Co. had not paid for the cement, urges payment, incloses a bill for the cement, and promises to credit them with any cement that they should return.

Defendant's exhibit 4 is a letter written by the plaintiff to Frank Mack on September 25, 1912, concerning the claim for cement, and in this letter the plaintiff again expresses disappointment that the bill had not been paid, urges payment, and incloses another bill covering the 106 barrels of cement and some items not relevant to the issues in this case.

The defendant's exhibit 6 is a check for $19.25 by which Mack, Duke & Co. paid the freight on said cement from La Grande to Union. The check is dated August 28, 1912, and appears to have been paid. The evidence tends to prove that the defendant delivered said cement to Mack, Duke & Co. on said day, and that they paid the freight at that time.

The defendant's exhibits 1, 2, 3, and 4 show that, after the defendant delivered the 106 barrels of cement to Mack, Duke & Co., the plaintiff charged said cement to said firm on the plaintiff's books and made frequent efforts to collect from said firm the price of said cement. The manager of the plaintiff admits that he knew, as early as September 1, 1912, that said cement had been delivered to said firm, and that he never made any claim to the defendant that it had wrongfully delivered said cement to said firm until December 7, 1912. In other words, the plaintiff waited more than three months after it knew that the cement had been delivered to said firm before making any complaint to the defendant of said delivery, and in the meantime endeavored to collect the value of the cement from said firm.

Said exhibits 1, 2, 3, and 4 were admissible as evidence as tending to prove a sale of the cement to said firm, and as tending to prove, also, that the plaintiff approved or ratified the delivery of said cement by the defendant to said Mack, Duke & Co. after it knew of such delivery.

Exhibit 6 tended to show that said firm paid the freight on said cement. As the cement was consigned to the plaintiff, the freight was properly chargeable to it. The plaintiff admits that it did not pay the freight. We think that said exhibit was admissible as a circumstance tending to support the defendant's theory. However, it was not a reversible error, if error at all, as its admission could not injure the plaintiff.

The third assignment of error is the admission of the evidence of A. I. Bidler to prove that Mack, Duke & Co. paid the freight on said cement. The admission of that evidence was not error.

6. The giving of the following charges to the jury is assigned as error:

(1) "I instruct you, gentlemen of the jury, that it is the duty of a common carrier of goods to deliver the goods only to the consignee named in the bill of lading, or some one authorized by the consignee to receive the same. It is the duty of a railroad company not to deliver freight without the production of the bill of lading. If you find from the evidence in this case that the defendant delivered the cement to Mack, Duke & Co. without the production of the bill of lading, and without plaintiff's consent or direction, and that defendant did not, subsequent to the delivery of said cement to Mack, Duke & Co., ratify said delivery to said Mack, Duke & Co., and if you further find that the plaintiff was the owner of the cement at the time it was delivered to Mack, Duke & Co., then you will find for the plaintiff for the reasonable value thereof."

(2) "If you find from the evidence in this case that the plaintiff either expressly or impliedly consented to the delivery of said carload of cement to Mack, Duke & Co., or that after the same was so delivered to them they ratified and approved of said delivery, then your verdict must be for the defendant."

(3) "If you find from the evidence in this case that said carload of cement upon its arrival at Union, Oregon, was delivered to Mack, Duke & Co. by the defendant, and that the plaintiff immediately or shortly thereafter had notice and knowledge of such delivery, and thereupon charged up said car of cement to Mack, Duke & Co., and thereafter wrote to them admitting and stating that they had shipped said carload of cement to them and never made any claim against the railroad company for wrongful delivery of said cement until the 7th day of December, 1912, and that plaintiff intended to release the defendant company from liability for misdelivery, and take the said Mack, Duke & Co. for payment, then it will be your duty to return a verdict for the defendant."

(4) "I instruct you, gentlemen of the jury, that plaintiff had a right to have the cement consigned to itself at Union, Oregon, and that the defendant had no right to deliver the cement to Mack, Duke & Co. unless the plaintiff authorized the railroad company to deliver the cement to Mack, Duke & Co."

The answer alleges *inter alia,* that on August 21, 1912, the plaintiff sold and shipped the cement in question to the firm of Mack, Duke & Co., and that the defendant on the 28th day of August, 1912, delivered said cement to said firm at Union, and that said firm receipted for said cement by the authority of the plaintiff in the name of W. H. Stanchfield (its manager), and that the plaintiff charged on its books said cement to said firm at the price of $349.80, and sent a bill and statement of such sale to said firm, and that the defendant was immediately advised of said delivery to

said firm and made no objections thereto until December 7, 1912, and that the plaintiff fully ratified said delivery to said firm, etc.

The evidence tends to show that said cement was delivered to said firm on August 28, 1912. Mr. Stanchfield, manager of the plaintiff, admits that he made out a statement of account against said firm for said cement, charging them therewith as of date of August 21, 1912, the date of said shipment, and this statement was given or sent to said firm, and it bears date of September 1, 1912, four days after said cement was delivered by the defendant to said firm. He admits, also, that he from time to time sent to said firm other statements of said account, urging them to pay for said cement, and that he never complained to the defendant of said delivery of said cement to said firm until December 7th, more than three months after such delivery. On pages 16 and 17 of the evidence, Mr. Stanchfield testifies that he consigned said cement to himself with the intention of going to Union and delivering the cement to himself, and either to collect for it or make arrangements for the collection. He admits that he had some talk with Mack, Duke & Co. about the cement before it was shipped, and about the use of it, if they complied with certain conditions. This witness says that it must have been two weeks before he learned that said firm had obtained possession of the cement, and he says that when he learned that they had obtained the cement he commenced to "punch" them up for payment for the cement, and gave them "hail Columbia" over the telephone, and that he wanted to know how they obtained the cement without having the bill of lading. He demanded payment for the cement as soon as he learned that they had it. He did not at that time demand of the defendant to know why it had delivered

the cement to said firm. There must have been some reason for the plaintiff's failure to call the defendant to account for delivering the cement to said firm, they not being the consignees and not having the bill of lading. There were facts in evidence from which the jury could properly find that the plaintiff had sold the cement to Mack, Duke & Co., and that the plaintiff ratified and approved the delivery of the cement to them. It was for the jury to determine from the evidence what the facts were; they, and not the court, weigh the evidence.

7. The consignee of goods is *prima facie* entitled to have the goods delivered to him, and there is a disputable presumption that the consigned goods belong to the consignee: 4 Am. & Eng. Ency. of Law (2 ed.), 536.

8. However, a carrier of goods is always justified in delivering them to their true owner. But, when he delivers them to a person other than the consignee or the lawful holder of the bill of lading, the *onus* is on him to show that the person to whom he delivers them is the true owner: 5 Am. & Eng. Ency of Law (2 ed.), 196; 6 Cyc. 471.

9. In this case the plaintiff consigned the goods to itself, and a bill of lading was issued to the plaintiff and retained by it. Hence the *onus* was on the defendant to show that the cement belonged to Mack, Duke & Co., or that it was delivered to said firm by authority of the plaintiff, or that, after the plaintiff had knowledge that the cement had been delivered by the defendant to said firm, it ratified such delivery.

10. Ratification may be proved by express words, or it may be implied from words, acts, or silence. Discussing the subject of implied ratification, Clark & Skyles in their work on Agency, volume 1, section 134, says: "As has been seen, except where an agent's authority

is required to be given in a special form, as by instrument under seal, or by simple writing, it may be given by parol. And as the ratification of an unauthorized act is, in effect, giving authority after the act is performed, and may be made in the same manner in which the original authority could have been given, so a ratification, except when required to be in a special form, may be by parol, and may be implied from the acts, words, or silence of the principal. If the principal by his conduct, by his words, or by his silence, has led others to believe that he has sanctioned an unauthorized act performed in his behalf, by his agent, or by an assumed agent, he will be held to have ratified such act, whether it was his intention to do so or not'': See, also, Mechem, Agency, § 146.

The first, second and third charges set out, *supra,* state the law correctly. The first charge instructs the jury that it is the duty of a carrier to deliver the goods only to the consignee named in the bill of lading, or to someone authorized by the consignee to receive them. It then states that it is the duty of a carrier not to deliver freight without the production of the bill of lading. This is true as a general rule. This charge, after stating the above general principles, instructs the jury that, if they find from the evidence that the defendant delivered the cement to Mack, Duke & Co. without the production of the bill of lading, and without plaintiff's consent or direction, and that the defendant did not, subsequent to the delivery of the cement to Mack, Duke & Co., ratify said delivery to said firm, and they further find that the plaintiff was the owner of the cement at the time it was so delivered to said firm, then they should find for the plaintiff for the reasonable value thereof. This states the law correctly as applied to the facts of this case. The plaintiff was entitled to a verdict

if it had not sold the cement to Mack, Duke & Co., before the cement was delivered to said firm, unless it had consented to said delivery, or had directed it to be made to said firm, or had ratified such delivery after it had knowledge thereof.

11. If the plaintiff consented to or authorized said delivery, or ratified it after having knowledge that it had been made, it could not maintain an action against the defendant for making such delivery. Its previous consent to such delivery or its subsequent ratification thereof would constitute a complete bar to such an action. What we have said applies also to the second and third charges set out *supra*.

12. The fourth charge set out *supra* instructs the jury that the plaintiff had a right to have the cement consigned to itself at Union, and that the defendant had no right to deliver the cement to Mack, Duke & Co., unless such delivery was authorized by the plaintiff. This charge omitted to state that, if the plaintiff ratified such delivery after knowing that it had been made, such ratification would relate back to such delivery and validate it.

13. But the instructions are to be construed as a whole, and not disconnectedly, and an instruction, faulty by reason of the omission of some essential matters, may be cured by other instructions given which set forth the omitted matters: See 1 Brickwood's Sackett, Instructions, § 173.

This charge does not directly contradict the other instructions. It merely omits to mention ratification, but ratification is explicitly stated in three other charges that were given. The jury were not misled by this fourth charge, as is conclusively shown by their verdict for the defendant. The jury must have believed that the plaintiff either authorized the delivery to Mack, Duke & Co., or ratified it after it was

made; otherwise they would not have found for the defendant under the instructions.

The charge of the court covered all the questions at issue and it was fair to each party and we find no error in it.

We find, also, that the court did not err in refusing to give the charges requested by the plaintiff, or in overruling the plaintiff's motion for a new trial, or for judgment notwithstanding the verdict.

The judgment of the court below is affirmed.

AFFIRMED.