Argued February 4, affirmed as modified March 10, 1971

RICHARDSON, *Respondent, v.* RAILWAY
EXPRESS AGENCY, *Appellant.*

482 P2d 176

*John R. Bakkensen,* Portland, argued the cause for appellant. With him on the briefs were King, Miller, Anderson, Nash & Yerke, and Clifford N. Carlsen, Jr., Portland.

*Raymond R. Bagley, Jr.,* Portland, argued the cause for respondent. With him on the brief were McColloch, Dezendorf, Spears & Lubersky, and James C. Dezendorf, Portland.

TONGUE, J.

This is an action by a shipper against a carrier to recover damages alleged to have been caused by the misdelivery of a shipment of electronic equipment from Portland to Richmond, Virginia. The complaint also seeks to recover attorneys' fees under ORS 743.114, providing for attorneys' fees in actions on

policies of insurance. Defendant appeals from a judgment in favor of plaintiff for $2,027.50 in damages and $600 in attorneys' fees.

Defendant contends that the trial court erred in holding that delivery could only be made at Richmond, Virginia, to plaintiff (who was named in the shipping receipt or bill of lading as the consignee) and that delivery to Georgia-Pacific Corporation was improper. Defendant also contends that the trial court erred in holding that the "declared value" provision of the shipping receipt constituted a policy of insurance.

Plaintiff is the manufacturer of automatic controls used in plywood plants. Defendant is a common carrier. Plaintiff entered into an agreement with Georgia-Pacific Corporation for the sale of an electronic timing device for installation at its plant in Emporia, Virginia. It does not appear whether or not there was any written contract. According to the testimony, however, the equipment was being sold "on 30 day approval," with the right of the purchaser to return it if not satisfied at the end of that period, but with the obligation to pay for the equipment if satisfied at that time. Under that arrangement, however, plaintiff was under obligation to install the equipment and for that reason had it shipped to himself at the Richmond airport, where he expected to pick it up for installation at the Georgia-Pacific plant in Emporia, some 65 miles away.

Accordingly, one of plaintiff's employees had the equipment packed in a container, weighing a total of 61 pounds, and delivered it to defendant at the Portland airport for shipment by air express to Richmond, Virginia. Plaintiff's employee who made that delivery testified that he told defendant's employee at the air-

port to ship the container to Richmond and to hold it there for plaintiff to pick up at the airport. Defendant's employee then filled out a form which served as a shipping record for the defendant, with one copy to be attached to the shipment. That form was filled out by defendant's employee to name plaintiff as the "consignee," with "Georgia-Pacific Corp" as his "street address." Plaintiff's employee testified that the reason for naming Georgia-Pacific Corporation was that "that was the final destination and they evidently had to have it," but that he told defendant's employee to "hold" the shipment at the airport for plaintiff.

The shipping receipt or bill of lading, as filled out by defendant's employee, however, did not indicate that the shipment was to be held at the Richmond airport and defendant offered testimony that, according to company regulations, if such instructions had been given such a notation should have been made on that document and a separate label should also have been attached to the package, which was not done in this instance.[1]

The equipment was then shipped by Eastern Airlines to Richmond, Virginia. Meanwhile, plaintiff flew to Richmond, arriving there three hours after arrival of the shipment. He then rented a car to take the equipment to Emporia for installation. Upon contacting Eastern Airlines, however, he was told that "they didn't know anything about it" and was finally told that it had been shipped by bus to Emporia. He

---

[1] The same witness testified, however, that the shipping receipt or bill of lading, was filled out with the letters "RIC," so as to show that the "final destination office" was the Richmond airport and that "if it goes to a point beyond the airport office, it's also indicated on there as final destination other than the airport office."

then went to the bus depot there, but refused to take delivery when he observed that a hole was torn in one corner of the container and that a "steel plastic covered cable was pinched almost in two," leading him to believe that "it had to fall at least 20 feet." The equipment was later shipped back to plaintiff at Beaverton, Oregon, where the equipment was found to be damaged beyond repair.

No testimony was given by anyone who had personal knowledge of the facts relating to the arrival of the equipment in Richmond or its condition at that time. Defendant's claims adjuster testified, however, that if there had been any "visible damage" a notation to that effect should have been made on the "express receipt," which was not done. He also testified that upon arrival of the shipment at Richmond one of defendant's employees prepared a "Collect Delivery Record," in which he mistakenly "transposed" or "reversed" the name of plaintiff and Georgia-Pacific Corporation, so as to read that the consignee was "Georgia-Pacific Corporation" and that its street address was "c/o Mark Richardson."[2] This witness also testified that defendant's "man" in Richmond did not know plaintiff, but did know Georgia-Pacific Corporation and had a "due bill" of $40.25 for freight, so "in essence" he billed those charges to Georgia-Pacific.

It also appears that the package was delivered by defendant to Georgia-Pacific Corporation at Richmond, Virginia, after payment by it of the shipping charges, and that one of its employees then arranged

_____

[2] The copy of the shipping record or bill of lading attached to the package, however, indicated that the consignee was Mark Richardson, whose "street address" was Georgia-Pacific Corporation.

to have it shipped by bus to Emporia. According to plaintiff's testimony, however, Georgia-Pacific had not been told by him that the shipment was arriving at the Richmond airport, but knew only that the equipment was to be installed by plaintiff during that month at its Emporia plant.

1. *Defendant's Delivery to Georgia-Pacific Corporation was Improper.*

It is conceded that the shipping receipt was a straight bill of lading, as defined in 49 USC § 82, because it stated that the goods were "consigned or destined to a specified person." Under the terms of 49 USC § 89, a carrier is "justified" in delivering goods to one who is either the "consignee named in a straight bill for the goods" or "a person lawfully entitled to the possession of the goods." It is conceded, however, that if a carrier delivers goods to any other person it is liable in damages for such a wrongful delivery.

Defendant's primary contention is that Georgia-Pacific Corporation was "a person lawfully entitled to the possession of the goods." In considering this contention it must first be recognized that a carrier who makes such a contention after delivering goods to a person other than the named consignee or lawful holder of the bill of lading has the burden of proof to establish the ownership and right of possession of the goods at the time of such delivery. *Stanchfield Warehouse Co. v. Central R. of Oregon*, 67 Or 396, 406, 136 P 34 (1913); *Wolfe v. The Missouri Pacific Ry Co.*, 97 Mo 473, 11 SW 49, 51 (1889).

In support of this contention defendant urges that Georgia-Pacific Corporation was not only named

on the bill of lading as the "street address" of the plaintiff, but "as purchaser under the acceptance agreement, Georgia-Pacific had the right to retain the timer for 30 days without payment if it so desired," and that "it took delivery as purchaser, paid the transportation charges," citing *Elgin Mills, Inc. v. Chicago & North Western Ry. Co.*, 177 Neb 110, 128 NW2d 384 (1964).

In *Elgin*, however, while there was a sale of goods on acceptance, the court expressly found (at p 389) that "the very purpose of the agreement was the delivery of the seed to Rudy-Patrick for the purpose of testing," for "unloading and testing," and that "Rudy-Patrick was clearly entitled to the possession of the seed by agreement with the owner * * *."

In this case, on the contrary, not only did defendant fail to establish any such contractual terms, but plaintiff testified directly that under his agreement with Georgia-Pacific he was to personally install the equipment at the plant and that he did not even notify Georgia-Pacific of the shipment of the equipment to Richmond, much less agree that it take delivery upon arrival there. Plaintiff also offered testimony that upon the initial delivery of the equipment to defendant at the Portland airport plaintiff's employee gave express instructions that the goods were to be held for plaintiff at the Richmond airport. While this was denied by defendant, it offered no evidence sufficient to sustain its burden of proof to establish that at the time of the arrival of the shipment in Richmond, Virginia, Georgia-Pacific was either the owner of the equipment or entitled to its possession.

Defendant also cites *Erskine Williams Lumber Co. v. John I. Hay & Co.*, 160 So 650 (La Ct App 1935). In that case goods were shipped under a

straight bill of lading naming the shipper also as the consignee, "c/o John I. Hay Company." The court held that the carrier was "justified" in making delivery to Hay, but did so not only because the bill of lading was in such terms, but also because there had been prior dealings between the parties under which such deliveries had been made and that there was nothing at the time of the last shipment to call the attention of the carrier to any change in the relations between the parties. Thus, since the bill of lading in this case did not name plaintiff as consignee "c/o Georgia-Pacific Corporation" and since no evidence was offered of delivery of prior shipments to Georgia-Pacific we do not regard *Erskine* as requiring a different result in this case. We have also considered other authorities cited by defendant and find none of them to be directly in point.[9]

It is common practice for goods to be shipped under a bill of lading in which the shipper is named both as the consignor and consignee so as to reserve to him both title and right to possession of the goods. See ORS 72.5050 (1)(b) and 2 Williston on Sales (rev ed) 151-152, § 283.

Thus, in *Rountree v. Lydick-Barmann Company*, 150 SW2d 173 (Tex Civ App 1941), goods were shipped under a straight bill of lading naming the shipper as both consignor and consignee, as in this case, but with instructions to "notify Crone Company" on arrival of the shipment. As in this case, defendant contended that it was "justified" in delivering the goods

---

[9] Defendant also urges as an "independent basis" that "it should be held that Georgia-Pacific was plaintiff's representative as a matter of law." Again, however, we find that defendant failed to sustain its burden of proof by offering sufficient evidence to establish such a contention.

to Crone Company as "entitled to possession" of the goods. That contention was rejected by the court, holding (at p 176) that plaintiff "was the owner of the merchandise at all times and was entitled to possession at destination," with the result that "it was not sufficient for defendant to choose to deliver the goods to someone else not entitled to possession."⊕

■ A further reason for such a result is the well established rule that common carriers, particularly express companies, are held strictly to the performance of their duty to make delivery of goods at the place of destination to the person designated to receive them if he presents himself or can be found with reasonable diligence. *North Penn. R.R. Co. v. Commercial National Bank of Chicago*, 123 US 727, 734, 736, 8 S Ct 266, 31 L ed 287 (1887); *Estherville Produce Co. v. Chicago R.I. & P.R. Co.*, 57 F2d 50, 55 (CA 8, 1932); *Railway Express Agency v. Kessler*, 189 Va 301, 52 SE2d 102, 103 (1949).

In this case the trial court made findings of fact, among others, that this shipment "was to be delivered at said destination (at Richmond, Virginia) to plaintiff as consignee"; that "delivery, as made, was not to Richardson, and delivery to Georgia-Pacific was not to 'the person lawfully entitled to possession of the goods.' " After examining the entire record, as well as the cases and authorities cited by both parties,

---

⊕ Defendant would distinguish *Rountree* on the ground that in that case plaintiff had forwarded the bill of lading, properly endorsed, to a bank for collection from Crone before delivery, so that in advance of payment Crone was not a party entitled to possession of the goods, whereas "in the present case Georgia-Pacific's right to possession at the time of delivery was not qualified in any way." This, however, would beg the entire question, since it assumes that Georgia-Pacific had the right of possession—a fact which defendant had the burden to establish, but failed to prove.

we find that there was not only substantial evidence to support such a finding of fact, but also that such a result is supported by ample legal authority. It also follows that we agree with the holding of the trial court that plaintiff is entitled to recover his damages in the sum of $2,027.50.[5]

2. *Plaintiff is Not Entitled to Recover Attorneys' Fees As In An Action Upon a Policy of Insurance.*

When plaintiff delivered the equipment to defendant for shipment at the Portland airport his employee "declared" that it had a value of $2,000. The shipping receipt provided that:

> "The Company will not pay over $50, in case of loss, or 50 cents per pound, actual weight, for any shipment in excess of 100 pounds, *unless a greater value is declared and charges for such greater value paid.*"[6] (Emphasis added)

Upon declaring the value of the equipment to be $2,000, plaintiff paid the additional charges required

---

[5] No error is assigned for the allowance by the trial court of $27.50 in shipping damages paid by plaintiff for return of the damaged equipment from Emporia, Virginia, to Beaverton, Oregon.

[6] The shipping receipt also provided:

"In consideration of *the rate charged* for carrying said property which *is dependent upon the value* thereof and *is based upon an agreed valuation of not exceeding fifty dollars* for any shipment of 100 pounds or less and not exceeding fifty cents per pound, actual weight, for any shipment in excess of 100 pounds, *unless a greater value is declared* at the time of shipment, the shipper agrees that *the company shall not be liable in any event for more than fifty dollars* for any shipment of 100 pounds or less, or for more than fifty cents per pound, actual weight for any shipment weighing more than 100 pounds *unless a greater value is stated herein.* Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as last above set out and that the liability of the company shall in no event exceed such value." (Emphasis added)

by the terms of the shipping receipt and contends that this payment was to provide "insurance" on the shipment. Plaintiff also contends that, as a result, he is not only entitled to recover the declared value of the equipment, but is also entitled to recover attorneys' fees, by reason of ORS 743.114.

ORS 743.114 provides:

"Recovery of attorney fees in action on policy. (1) If settlement is not made within six months from the date proof of loss is filed with *an insurer* and an action is brought in any court of this state upon any *policy of insurance of any kind or nature,* and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, then the plaintiff shall recover as part of his judgment such additional sum as the court may adjudge to be reasonable as attorney fees." (Emphasis added)

ORS 731.106 defines "Insurer":

" 'Insurer' includes *every person engaged in the business of entering into policies of insurance.*" (Emphasis added)

ORS 731.102 defines "Insurance":

" 'Insurance' means a contract whereby one undertakes to *indemnify* another *or pay* or allow *a specified* or ascertainable *amount* or benefit *upon determinable risk contingencies,* and includes annuities." (Emphasis added)

Plaintiff contends that under these statutory provisions an allowance of attorneys' fees was proper because:

"ORS 743.114 authorizes an award of attorneys' fees in 'an action * * * brought in any court of this state *upon any policy of insurance of any kind or nature.*' (Emphasis added) The clear intention of ORS 743.114 is to disregard the lack of for-

mality of an instrument and look to the nature of the transaction. In undertaking the obligation to indemnify plaintiff in the amount of $2,000 upon the loss or destruction of the timer, defendant assumed a determinable risk contingency. Defendant's air express receipt (Ex. 1) is a contract of insurance and the award of plaintiff's attorneys' fees is appropriate under ORS 743.114."

Plaintiffs have not, however, cited any cases or other authorities in support of that contention.

■ It is true that the character of a contract of insurance cannot be concealed or changed by the use or absence of the word "insurance" and that even the fact that a contract expressly states that it is not a contract of insurance is not controlling, but that the courts will look behind the terminology used and will consider the contract in its entirety to ascertain what the parties intended to accomplish. 1 Couch on Insurance 2d, 39, § 1:12.

Upon examination of the provisions of the shipping receipt in this case, however, even in the light of this admonition, we cannot escape the conclusion that the primary purpose and intent of such provisions is to limit the amount of a carrier's liability for a shipment to the sum of $50 unless a greater value is declared and additional charges are paid, thus providing the shipper with a choice of rates, depending upon the valuation of the shipment and the resulting risk to the carrier. This follows from the fact that such provisions in shipping receipts are expressly authorized by 49 USC § 20 (11), which provides that a common carrier subject to the provision of that act (including defendant) shall be liable for "the full actual loss, damage or injury to such property carried by it," with the provision, however, that the

Interstate Commerce Commission may "establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released."⑦

■ In our view, the provision in the shipping receipt issued by defendant to the plaintiff in this case that defendant would not pay over $50 in case of loss or damage unless the shipper "declared" a higher value and paid a higher rate was a provision for limitation of liability and that provision, together with the "declaration" by plaintiff that this electronic equipment had a value of $2,000 and the payment of a higher rate, did not constitute or result in a "policy of insurance, of any kind or nature" within the intent of the legislature of Oregon in the enactment of ORS 743.102 and 743.114. The requirement of ORS 743.006 that all policies of insurance must be filed with and approved by the Oregon Insurance Commissioner, while shipping receipts issued by interstate carriers are subject to approval by the federal Interstate Commerce Commission, is a further reason supporting this same conclusion.

■ This is not a case in which there was evidence that the shipper was a person unfamiliar with the re-

---

⑦ See San Giorgio I. v. Rheinstrom Bros. Co., 294 US 494, 496-7, 55 S Ct 483, 79 L ed 1016, 1019-20 (1934); Chenango Textile Corporation v. Willock, 247 AD 638, 288 NYS 270, 272-3 (1936); and 10 Williston on Contracts (3d ed) 279, § 1119A. See also "Carriers: Liability for Partial Loss of Goods Within a Declared Valuation," 22 Cornell L Q, 565, 567 (1937), stating that "in paying a rate based upon declared valuation, the shipper is paying not for insurance, but for service, that is, the service rendered by the carrier in bearing the risk of carriage."

quirements and practices of carriers in the shipment of valuable goods or merchandise. On the contrary, as a manufacturer and shipper of electronic equipment plaintiff was presumably familiar with such requirements and practices. Neither is this a case in which the shipper requested "insurance" and was led to believe that after making a "declaration" of value and in return for payment of a higher rate his shipment would then be "insured." Cf *Kiernan v. Greyhound Lines, Inc.*, 261 Iowa 788, 156 NW2d 310 (1968).

Because we find that the shipping receipt issued by defendant to the plaintiff in this case was not a "policy of insurance" within the intent and meaning of ORS 743.114, it is not necessary to consider defendant's further contention that the liability of an interstate carrier for damage to an interstate shipment is prescribed by federal law and cannot be expanded by a state statute, such as ORS 743.114, to include attorneys' fees, citing *Adams Express Co. v. Croninger*, 226 US 491, 33 S Ct 148, 57 L ed 314, 320 (1913); *Thompson v. H. Rouw Co.*, 237 SW2d 662, 664, 665 (Tex Civ App 1951); *Southwestern Mot. Tr. Co. v. Valley Weathermakers, Inc.*, 427 SW2d 597, 599, 603, 604 (Tex 1968); and *Strickland Transport Co. v. American Distributing Co.*, 198 F2d 546, 547 (CA 5, 1952). But see 15 USC § 1011-2; *Missouri, Kansas and Texas Ry Co. of Texas v. Harris*, 234 US 412, 415, 34 S Ct 790, 58 L ed 1377, 1381, 1383 (1914), and *Rungee v. Allied Van Lines, Inc.*, 92 Idaho 718, 449 P2d 378, 386 (1968).

It follows that the trial court erred in awarding $600 in attorney's fees to the plaintiff in this case.

Affirmed, as modified.