Argued and submitted January 8, decision of Court of Appeals and judgment of circuit court affirmed May 30, 2008

STATE OF OREGON,
*Respondent on Review,*

*v.*

THOMAS PATRICK FRIES,
*Petitioner on Review.*

(CC 03CR0773; CA A124253; SC S055136)

185 P3d 453

Stephanie Hortsch, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were Peter Gartlan, Chief Defender, and Anne Fujita Munsey, Senior Deputy Public Defender, Office of Public Defense Services, Legal Services Division.

Janet Klapstein, Senior Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on

review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

KISTLER, J.

**KISTLER, J.**

The issue in this case is whether defendant possessed marijuana when he helped a friend move marijuana plants from one place to another. Defendant has argued that, because he was moving the plants at his friend's direction, he did not possess them. The trial court held otherwise and entered a judgment of conviction for possessing marijuana. A divided en banc Court of Appeals affirmed. *State v. Fries*, 212 Or App 220, 158 P3d 10 (2007). We allowed defendant's petition for review to consider the issue that divided the Court of Appeals and now affirm the Court of Appeals decision and the trial court's judgment.

Because this case arises on defendant's motion for a judgment of acquittal, we state the facts in the light most favorable to the state. One evening, defendant's friend Albritton called defendant and told him that he (Albritton) was being evicted. Albritton asked defendant if he would help him move his marijuana plants to his new home. Because Albritton had a medical marijuana card, defendant understood (and we assume for purposes of review) that Albritton lawfully possessed the marijuana plants. Defendant went to Albritton's new home, picked him up, and drove Albritton to his former home to pick up the marijuana plants. Albritton's former home was in an upstairs apartment, on the top floor. Defendant and Albritton went into the back bedroom of the apartment. Albritton pointed out the plants and said, "This is what I really needed help moving." According to defendant, there were three or four marijuana plants in "one long, big-type thing," which defendant moved from Albritton's apartment to defendant's Jeep.[1]

Defendant loaded the plants and some of Albritton's other belongings into the back of his Jeep.[2] Albritton got in

---

[1] At defendant's trial, his lawyer asked, "Did [Albritton] indicate in any way that—that you independently could possess or, uh, move the plants? That they were anything but his possession?" Defendant replied, "Well, he—he wouldn't let them out of his sight."

[2] Defendant explained that he has a four-door Jeep Cherokee. "[I]t's got a big hatch in it. It opens up. You can put the seats down in it. And it will look like a truck." Defendant lowered the back seat and put "a stereo, some other boxes * * * and the [marijuana] plants" in the back of the Jeep.

the front passenger seat of the Jeep, and defendant started driving to Albritton's new home. As they were driving, a police car began following them. Defendant pulled into a driveway. The officer drove past, circled around, and later observed defendant driving on a different street. The officer followed defendant's Jeep as defendant turned onto another street and then pulled into another driveway. Defendant and Albritton remained in the Jeep. The officer approached them and spoke with them briefly. When asked why "they were being so evasive tonight, [defendant] said, 'We didn't want to get stopped and have to answer any questions about the marijuana.'" The officer then arrested defendant and Albritton.

The state charged defendant with possessing marijuana. At the end of defendant's trial, he argued that there was no evidence from which a reasonable trier of fact could find that he had possessed the marijuana plants. Specifically, he contended that, because the evidence showed only that he moved the plants under Albritton's direction, he did not "possess" them. The trial court denied defendant's motion for a judgment of acquittal and, sitting as the trier of fact, found defendant guilty. The court found initially that defendant knew that the plants were marijuana. It then found that defendant "actually physically possessed [the marijuana plants] because he moved [them] from Point A to Point B, knowing * * * what it was." The trial court explained that, although the medical marijuana statutes permit designated caregivers to possess medical marijuana, defendant was not Albritton's designated caregiver. The court concluded:

> "Is it fair? Perhaps not. In the overall scheme of things, he was someone helping his buddy. And perhaps it's unfair that [defendant] didn't have legal permission to have that particular controlled substance. But there's actually no doubt in my mind that he knowingly possessed that controlled substance, the growing marijuana."

The court accordingly found defendant guilty of possessing marijuana and sentenced him to 18 months probation, conditioned on serving five days in jail and paying a $500 fine and costs.

As noted, a divided Court of Appeals affirmed the trial court's judgment, and we allowed defendant's petition for review to consider whether there was sufficient evidence to permit a reasonable trier of fact to find beyond a reasonable doubt that defendant possessed the marijuana plants. *See State v. King*, 307 Or 332, 339, 768 P2d 391 (1989) (stating standard of review for motions of judgment of acquittal). On that point, defendant reiterates his argument that possession of marijuana requires more than proof that he knowingly moved the marijuana plants at Albritton's direction. In his view, persons who move or hold controlled substances at another person's direction lack sufficient "sovereignty, supremacy, power or authority" over those substances to possess them.

Defendant's argument presents an issue of statutory construction, and we begin by examining the text and context of the relevant statutes. ORS 475.840(3) makes it unlawful for "any person knowingly * * * to possess a controlled substance."[3] ORS 161.015(9) in turn provides that " '[p]ossess' means to have physical possession or otherwise to exercise dominion or control over property."[4] As the text of that definition makes clear, a person may possess property in one of two ways. He or she may "have physical possession" of the property, which customarily is referred to as actual possession. *See State v. Connally*, 339 Or 583, 591, 125 P3d 1254 (2005) (discussing actual and constructive possession in construing city ordinance). Alternatively, even if a person does not have actual possession of the property, he or she may have constructive possession of it if the person "otherwise * * * exercise[s] dominion or control over [the] property."

Because the trial court found that defendant actually possessed the marijuana plants, we begin with the first

---

[3] When defendant moved the marijuana in 2002, *former* ORS 475.992(4) prohibited possessing controlled substances. In 2005, the legislature renumbered *former* ORS 475.992 and made minor changes that are not relevant to the issue presented here. *See* Or Laws 2005, ch 708, § 39 (making those changes). For ease of reference, we refer to the current version of the statutes prohibiting possession of controlled substances.

[4] ORS 161.035(2) provides that the definition of "possess" in ORS 161.015(9) "shall govern the construction of * * * any offense defined outside [the Oregon Criminal Code]," such as the prohibition against possession of controlled substances defined in ORS chapter 475.

part of the statutory definition. The legislature used the infinitive phrase "to have physical possession" to define actual possession. We note, as an initial matter, that the definition of actual possession is somewhat circular; the legislature said "possess" means to have physical "possession." That said, the definition contains some clues that aid our analysis. The dictionary defines possession as meaning:

> "**1 a :** the act or condition of having in or taking into one's control or holding at one's disposal ‹the enemy's ~ of the town› ‹have several old manuscripts in my ~› **b :** actual physical control or occupancy of property by one who holds for himself and not as a servant of another without regard to his ownership and who has legal rights to assert interests in the property against all others having no better right than himself ‹the locker shall remain in the student's ~ throughout the course› * * *."

*Webster's Third New Int'l Dictionary* 1770 (unabridged ed 2002).[5] The dictionary thus distinguishes possession from ownership and defines possession to mean, at its core, "control." "Physical" is an adjective that defines the type of control necessary to establish actual possession. In this context, physical means "of or relating to the body." *Id.* at 1706. As a general rule, "to have physical possession" of property means to have bodily or physical control of it.

The statutory definition of actual possession follows the generally understood use of that concept in the criminal law. *See Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998) (recognizing that statutory context includes preexisting common law). In *State v. Oare*, 249 Or 597, 599, 439 P2d 885 (1968), for example, the court explained that a person who had a narcotic "upon his person" would actually possess it. Similarly, in *State v. Hall*, 269 Or 63, 65-66, 68, 523 P2d 556 (1974), the court held that a defendant who sat on a bag of marijuana when the police entered an apartment occupied

---

[5] *Webster's* divides definitions of a word into senses and subsenses. *Webster's* at 17a. The first sense of the word possession contains four subsenses. The first two subsenses are quoted in the text. The third subsense of possession is "copulation," and the fourth is "control of [a] playing piece (as a ball or puck) in football, basketball, ice hockey, or other game." *Webster's* at 1770. We think that, in defining "possess" as "physical possession," the legislature did not intend to refer to the third or fourth subsenses of possession.

by several people and then threw the bag to the ground disclaiming any knowledge of its contents actually possessed the marijuana. Those authorities confirm that "to have physical possession" of property means actual physical control of property, although some physical contacts with property may be so momentary or fleeting that they are insufficient as a matter of law to establish physical control. *See* Wayne R. LaFave, 1 *Substantive Criminal Law* § 6.1(e) at 432-33 (2003) (summarizing generally understood use of possession in the criminal law).

Defendant argues that the definition of constructive possession in the second part of ORS 161.015(9) demonstrates that a person who holds property at another's direction does not actually possess it. Defendant's argument runs as follows. He notes that ORS 161.015(9) provides that " '[p]ossess' means to have physical possession or otherwise to exercise dominion or control over property." Defendant argues that, in order to prove sufficient dominion or control to establish constructive possession, the state must offer evidence of "sovereignty, supremacy, power or authority" over property. He then contends that, in using the word "otherwise," the legislature manifested its intent that actual possession requires proof of the same type of "dominion or control" that constructive possession does. From that premise, defendant concludes that a person who holds property at another's direction does not exercise sufficient sovereignty, supremacy, power, or authority over the property to constitute actual possession.

One problem with defendant's argument is that it gives too little weight to the legislature's use of the word "otherwise." "Otherwise" means "in a different way or manner." *Webster's* at 1598. As used in ORS 161.015(9), "otherwise" signals that the state may prove "possession" either by showing physical control or by showing dominion or control "in a different way or manner." To be sure, as defendant argues, actual and constructive possession share a common element—control. But the legislature's use of the word "otherwise" makes clear that actual and constructive possession contemplate different types of proof. The former requires proof of physical control. The latter contemplates proof of other attributes of dominion or control. *See Oare*, 249 Or at

599 (discussing proof of actual and constructive possession). The fact that a person holds property at another's direction does not necessarily mean that he or she does not actually possess it.

The statutory context leads to the same conclusion. The legislature has established a number of exceptions to the general prohibition against possessing controlled substances. Among other things, a "common * * * carrier * * * or an employee thereof" may "lawfully possess controlled substances" if the possession occurs "in the usual course of business or employment." ORS 475.125(3)(b). Similarly, an "agent or employee of any registered manufacturer, distributor or dispenser of any controlled substance" may "lawfully possess controlled substances" if the "agent or employee is acting in the usual course of business or employment." ORS 475.125(3)(a).

If defendant were correct that "possess" does not include persons who handle or transport controlled substances at another's direction, then there would have been no need for the legislature to provide that common carriers or agents lawfully may possess controlled substances in certain circumstances. Common carriers and agents ordinarily act at another's direction. *See Richardson v. Railway Exp. Agency*, 258 Or 170, 178, 482 P2d 176 (1971) (recognizing "well established rule that common carriers * * * are [generally] held strictly to the performance of their duty to make delivery of goods at the place of destination to the person designated to receive them"); ORS 475.005(4) (defining an agent for purposes of the controlled substances laws as an "authorized person who acts on behalf of or *at the direction of* a manufacturer, distributor or dispenser") (emphasis added). We should not read the definition of "possess" in a way that would render those exemptions largely redundant. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (explaining that statutes should be construed, if possible, to give effect to all their provisions).

Defendant argues that one of this court's cases, *State v. Gordineer*, 229 Or 105, 366 P2d 161 (1961), is contextual support for his position. The defendant in *Gordineer* was charged with contributing to the delinquicy of a minor. The

question, as the court stated it in *Gordineer,* was whether, if the defendant "gave a bottle of intoxicating liquor to the minor with intent to relinquish all right of possession and control over it," the minor would possess the liquor in violation of ORS 471.430. *Id.* at 111. In answering that question, the court reasoned:

> " 'Possession', as used in ORS 471.430, is preceded by the words 'purchase, acquire'. These words indicate a legislative intent that the minor must know that he is in the physical possession of intoxicating liquor. * * * Nor can we attribute to the legislature the intent to make a criminal of a minor child who, though knowing there is intoxicating liquor in a package, carries the liquor from an automobile into the home of a neighbor at the neighbor's request.
>
> "In our opinion 'possession', as used in this statute, includes in addition to guilty knowledge the intent of the minor to possess full control over the liquor with the right to enjoy its consumption to the exclusion of others."

*Id.* (citation omitted). As we understand the court's interpretation of "possession" in *Gordineer*, it was limited to the term "as used in this statute," *i.e.,* ORS 471.430. Specifically, the court looked to the fact that the terms "purchase" and "acquire" preceded the word "possession" in holding that proof of possession under ORS 471.430 required proof of "the intent of the minor to possess full control over the liquor with the right to enjoy its consumption to the exclusion of others." In enacting ORS 161.015(9), the legislature did not define "possess" as "possess[ing] full control over [property] * * * to the exclusion of others." It chose instead a narrower definition—physical control.[6]

---

[6] In a memorandum of additional authorities, defendant quotes a treatise on criminal law for the proposition that, at common law, an employee who held property for an employer had custody but not possession of the property. He argues that the Oregon Criminal Code perpetuates the common-law distinction between possession and custody. The treatise explains, however, that the distinction on which defendant relies was a fiction unique to the common law of larceny and was designed to permit prosecution of employees who appropriated property that their employers had entrusted to them. Wayne R. LaFave and Austin W. Scott, Jr., *Handbook on Criminal Law* § 84 at 619 (1972). Not only was the distinction unique to common-law larceny, but the legislature abrogated that distinction when it enacted the modern analogue of larceny (theft) in the Oregon Criminal Code. The legislature defined the "owner" of property taken to mean "any person who has a right to possession thereof superior to that of" the person who takes it. ORS 164.005(4). Oregon's definition thus recognizes that—contrary to defendant's

Considering the text and context of ORS 161.015(9), we conclude that the statutory phrase "to have physical possession" means what it says: to have physical control. That said, we recognize that some physical contacts with property may be too transient or fleeting to say that a person has established physical "control" over the property and that, when the duration of the physical contact is minimal, the circumstances surrounding the contact can bear on the question whether the defendant exercised sufficient physical control to find actual possession. *See* LaFave, 1 *Substantive Criminal Law* § 6.1(e) at 432 (discussing actual possession); *compare United States v. Santore*, 290 F2d 51, 64-65 (2d Cir 1960) (holding that no reasonable trier of fact could find a defendant who held a package of narcotics "one brief moment" before voluntarily declining to take them possessed them), *with United States v. Gregory*, 309 F2d 536, 538 (2d Cir 1962) (holding that a reasonable trier of fact could find that a codefendant who held narcotics briefly before throwing them away on seeing police officers approach had sufficient control to establish actual possession).

With that background in mind, we turn to the only question that defendant's motion for judgment of acquittal presents: whether the evidence was sufficient to permit a reasonable trier of fact to find that defendant possessed the marijuana. On this record, a reasonable trier of fact could find that defendant carried Albritton's marijuana plants out of the back bedroom of Albritton's apartment, took them down the stairs, loaded the plants in the back of defendant's Jeep, and drove the Jeep for several minutes before the police stopped him. This was not a fleeting, momentary, or unintentional physical touching, or so a reasonable trier of fact could find. *Cf. Gregory*, 309 F2d at 537 (evidence that a codefendant carried marijuana from a hotel to a car parked across the street sufficient to establish actual possession); *Commonwealth v. Harvard*, 356 Mass 452, 253 NE2d 346 (1969) (evidence that a defendant who arranged a marijuana sale and passed marijuana three to four feet from the seller's car to the buyer's car sufficient to establish possession). Rather, defendant's acts were part of an extended effort to

---

argument—an employee has "possession" of the property his or her employer entrusts to him, just not a superior right of possession.

move the marijuana plants from one location to another location in a different part of Coos Bay—an effort that defendant and Albritton's arrest cut short.

To be sure, defendant argues that, because he was only moving the marijuana plants at Albritton's direction, the trial court was required to conclude that he did not possess them. However, neither the definition of possession nor the statutes criminalizing possession of controlled substances contain a categorical exception for persons who possess controlled substances at another person's direction. We thus agree with the majority of the Court of Appeals and the trial court that the evidence was sufficient to permit a reasonable trier of fact to find that defendant possessed the marijuana plants.

In reaching that conclusion, we note, as the trial court did, that, for all that appears from the record, defendant was helping a friend who lawfully possessed the marijuana plants. The statutes prohibiting possession of controlled substances and authorizing the use of medical marijuana contain a number of specific exceptions. They permit, for example, designated caregivers, as well as common carriers, to possess marijuana in certain specified circumstances. *See* ORS 475.309 (permitting designated caregivers to possess marijuana if certain conditions are met); ORS 475.125(3)(b) (permitting common carriers to possess controlled substances if certain conditions are met). Defendant does not argue that he falls within any of those exceptions, and we may not add to the exceptions that the legislature has created. *See US West Communications v. City of Eugene*, 336 Or 181, 188, 81 P3d 702 (2003) (explaining that courts may not rewrite statutes to insert what legislature omitted). Rather, the only question before us is whether a reasonable trier of fact could find that defendant knowingly possessed marijuana plants. The answer to that question is "yes." Accordingly, we affirm the trial court's judgment and the Court of Appeals decision.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.