BALMER, C. J.,
dissenting.
The majority adopts a definition of “required duties,” as that term is used in the Portland City Charter, that is *425 neither compelled by the ordinary meaning of those words nor likely consistent with the intent of the voters when they adopted that portion of the charter in 1948 or amended it in 1989. The result is a narrow and rigid construction of the “city constitution,” see Portland Police Assn. v. Civil Service Board, 292 Or 433, 440, 639 P2d 619 (1982) — an interpretation that prevents the city from reasonably administering the Fire and Police Disability and Retirement Fund in a way that is fair to both disabled fire fighters and the city. For those reasons, I agree with the Court of Appeals that the city did not breach the express terms of the charter when it adopted a “return to work” program for disabled fire fighters. I respectfully dissent.
Section 5-306 of the charter provides that “[a]n Active Member shall be eligible for the service-connected disability benefit when unable to perform the Member’s required duties * * *.”[1] The dispute in this case (or at least this part of this case) involves the city’s assertion that the “required duties” of a fire fighter may include a subset of the duties listed in the fire fighter job classification, so that a fire fighter who is unable to perform all of the duties listed in the job classification because of a service-connected injury — but can perform some of those duties — may later be assigned to a “light-duty” position within the same job classification. Plaintiffs argue that, if a service-connected disability renders the fire fighter unable to perform all the duties “necessary to qualify as a Fire Fighter” because of a service-connected disability, then the fire fighter is disabled — and remains disabled — even if the fire fighter can perform some of the duties in the job classification and is directed by the city to do so. Because the fire fighter is “disabled,” in the plaintiffs’ view, as long as he or she is unable to perform the “necessary” duties in the fire fighter job classification, the fire fighter is entitled — at a minimum and “regardless of the amount of wages earned in other employment” — to disability benefits of 25 percent of his or her base pay. See Portland City Charter § 5-306(e)(4). The benefits for those persons increase each year, because they are “adjusted to *426 reflect changes in the rate of Base Pay of the position held by the Member at disability.” Portland City Charter § 5-306(f). They generally continue until the member reaches the “disability retirement age” or the social security retirement age, Portland City Charter § 5-304(a), at which time the member begins receiving retirement benefits. Individuals who were permanent sworn employees at the time of injury and receive disability benefits continue to be “members,” for purposes of the disability fund, even if they no longer are active employees of the Bureau of Fire. Portland City Charter § 5-301.
The majority essentially agrees with plaintiffs’ argument, holding that “required duties” means the “core” duties of a job. See 356 Or at 404. I briefly explain what I view as the majority’s interpretive error and then turn to what seems to me to be a definition of that term that is more consistent with the city charter and more likely to have been intended by the voters in establishing the disability program.
The majority seeks to define the word “required” by first examining the word “duty,” which “required” modifies. The majority takes the obviously correct dictionary definition and concludes that a “duty” is “something that one is obligated to perform.” Id. at 413. However, it then rejects the city’s argument that “required” is “something compelled or commanded to be done.” The majority rejects that construction on the theory that it would render the word “required” superfluous, because the word “duty” already refers to something one is obligated to do. Id. To avoid the redundancy that it perceives, the majority instead concludes that the word “required” “would seem to carry a different meaning in this context, one that focuses on the core duties of a job, that is, those duties that are necessary or essential to the job.” Id. at 414. The majority thus views “duties” as the larger set of tasks identified in a job classification or position description, and “required duties” as the subset of those tasks that are necessary or essential for the position. The majority supports its definition by citing a definition of “require” listed in Webster’s Third International Dictionary, which refers to that which is “necessary or essential” and as “appropriate in a particular case” or necessary to comply *427 with “some regulation.” Id. (quoting Webster’s Third New Int’l Dictionary 1929 (unabridged ed 2002)). From that conclusion, the majority holds that a person who is unable, because of a service-connected injury, to perform the “core” duties of the fire fighter is disabled, even if the person is able to perform other duties within the fire fighter classification. Id. at 414, 417, 421 (defining “required” duties as “core” duties).
As noted, the majority goes in search of a different definition of “required” than that proffered by the city and accepted by the courts below because it concludes that the definition of “something compelled or commanded to be done” defines the word “required” to mean, essentially, the same thing as the word “duties” and therefore renders “required” superfluous. But the majority is wrong. The text that we are to construe provides that “[a]n Active Member shall be eligible for the service-connected disability benefit when unable to perform the Member’s required duties * * * ” Portland City Charter § 5-306(b). “Required” in this context, of course, is an adjective modifying the noun “duties,” but it is simply an adjectival form of the verb “require.” In this employment context, it seems obvious to me that the word is being used to describe the “duties” that the employer “requires” of the employee. The more appropriate dictionary definition of “require” in this case, therefore, is “to impose a compulsion or command upon (as a person) to do something : demand of (one) that something be done or some action taken : enjoin, command, or authoritatively insist (that someone do something).” Webster’s Third New Int’l Dictionary 1929 (unabridged ed 2002). That definition focuses on what “duties” a person or entity (here the employer) “demand[s,]” “command[s,]” or “authoritatively insistís]” that the “person” do. See id. The Court of Appeals reached the same conclusion, stating that “under its plain meaning, the term ‘required duties’ refers to conduct or tasks the employer could compel or command an employee to perform.” Miller v. City of Portland, 255 Or App 771, 787, 298 P3d 640 (2013).
The definition of “require” that I propose is not rendered superfluous or redundant, contrary to the majority’s view, simply because the definition of “duties” also contains the concept of being obligated. See 356 Or at 413. “Duty” *428 means “obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession.” Webster’s at 705. The word “required,” a form of a verb, emphasizes the role of the person or entity doing the requiring and certainly implies the authority of the entity to determine which of the “duties” are “required.” There is a set of all the “duties” that could be commanded of someone in a particular position, but the “required duties” are the subset of those duties that the employer reasonably directs the particular employee to perform.
The majority defines the term “required duties” to mean the “core” duties of the job classification, but the word “core” appears nowhere in the text of any city charter provision or rule and appears to have been devised by the majority. The majority seeks to buttress its definition by suggesting that, if “required duties” meant only the duties within the job classification that the city directs an employee to perform, rather than “core” duties, the city could unfairly manipulate the duties that it requires of employees so as to deny them promised disability benefits. See 356 Or at 414 (arguing that the city could change “a member’s status * * * from fit to disabled and back again at any time, depending on which subset of duties in the pertinent job classification that the city decided to ‘require’ on a particular day”). That concern is misplaced, as least as it relates to the issues before this court.
First, nothing in the text indicates that all employees in a particular job classification must have the same “required duties” or that each employee must have the same “required duties” as long as they are in the same job classification — and the record demonstrates that they do not. We have been directed to no charter provision, administrative rule, or other source of law that affirmatively limits the city’s authority, as an employer, to direct employees to perform some, but not other, tasks within the employee’s job classification or position description. And, given the flexibility needed to administer a complex organization such as the Bureau of Fire and respond to evolving responsibilities and best practices, one would hardly expect such a rule. The required duties change based on changes in the Bureau of Fire’s needs, technology, individual fire fighters’ strengths *429 and weaknesses, and so on. Moreover, as the majority notes, the record shows that the city in fact does direct different fire fighters to perform a wide variety of different tasks, depending on their work assignment, such as working on a truck company, an engine company, or a fireboat company. Id. at 406. Nothing suggests that the management prerogative that permits such assignments does not also permit the city to assign fire fighters to perform some tasks within their job classification, but not others, as it deems appropriate. If the city can assign different tasks in that way to members who are not disabled, I can see no reason why members who are able to perform some needed tasks, but not others, cannot be directed to perform those tasks they can perform.
Second, to the extent that the city is alleged to have manipulated its administration of the disability plan and acted in bad faith in implementing the “return to work” policy, that issue is not before us. Plaintiffs’ complaint alleged that the city violated the implied covenant of good faith and fair dealing. The trial court concluded that there were disputed issues of material fact regarding that claim, rejecting the city’s motion for summary judgment on that ground, and the city did not appeal that ruling. The Court of Appeals remanded for further proceedings on that issue and the city did not seek review. See Miller, 255 Or App at 790. Those claims will thus proceed before the trial court.
Third, plaintiffs’ concern that, under the city’s interpretation of “required duties,” it could eliminate the disability program entirely is not well taken. Implicit in the disability provisions of the city charter is the concept that the “required duties” at the time of a service-connected injury or illness are the duties that the member had been assigned at that time, and an employee who cannot perform those duties is entitled to disability benefits. But any employer with an employee who can perform some, but not all, of the duties the employee was previously required to do ordinarily may adjust work assignments and duties in order to keep the individual employed.[2] Nothing in the charter suggests that the *430 duties of a fire fighter are so set in stone that they cannot be flexible and adapt to changing circumstances. Particularly when we are interpreting the “city’s constitution,” which can be changed only by a vote of the people, we should — absent clear evidence of contrary voter intent — avoid narrowly construing words of common usage in a way that frustrates the city’s reasonable efforts to deliver public services effectively.
The common sense definition of “required duties” that I propose is supported by the context in which that term is found. See State v. Fries, 344 Or 541, 548, 185 P3d 453 (2008) (where multiple definitions might provide the plain meaning this court uses context to determine which was the one intended by the drafters). The city charter itself declares that “[Restoring injured workers physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable is an important aspect of any disability system.” Portland City Charter § 5-202(h)(l). The majority’s interpretation of “required duties” makes it more difficult for employees to be restored “physically and economically to a self-sufficient status” by working a light duty job they are medically cleared to do. Under the majority’s interpretation, members are unable to keep their jobs at all if they cannot perform what the majority deems to be the “core” duties of the work, causing a loss of income and economic self-sufficiency. Respectfully, determining what duties within the fire fighter job classification are “required” for an employee to perform the work the Bureau of Fire believes to be important is for the city, not for this court.
In summary, the voters most likely intended a definition of “required duties” that furthers the various goals *431 of the disability plan for both the city and the employees— assisting employees with injuries in regaining their physical and economic self-sufficiency, ensuring city services provided by valued workers, and effectively using the city’s human and financial resources. The definition proposed above is not only the common sense and plain meaning of the words of the city charter, but also one that furthers those goals. It allows the city to retain trained employees rather than overburdening other fire fighters or expending public funds to hire and train new employees to perform the tasks assigned to those in the position of plaintiffs. It benefits the employees, because they remain employed without the reduction in salary that disability payments entail. See Portland City Charter § 5-306(e) (specifying amount of disability benefits to be 75 percent of their previous base pay in effect at disability during the first year from the date of disability, and 50 percent after the member is medically stationary or after four years). Finally, it is unlikely that the voters intended the city to incur the expense of paying disability benefits until retirement age for individuals who are trained and able to perform work the city needs to have performed, but chose instead to end their employment with the city.
For the foregoing reasons, I respectfully dissent.
Landau, J., joins in this dissenting opinion.

 As the majority does, “for purposes of simplicity, [I] will refer to the relevant city charter provisions as they exist today.” 356 Or at 405 n 2.

 Indeed, this appears to be the practice in administering the Fire and Police Disability Plan. An administrative rule provides that “[a] Member who is unable to perform his or her usual job but is able to do other work to which the Member may be assigned in his or her respective Bureau, is ineligible for disability benefits *430 if such a job is available to the Member. For example, a police officer whose injury prevents him or her from performing police duties in the field will be ineligible for disability benefits if the officer is capable of performing more sedentary duties and such sedentary position is available to the officer.” Fire and Police Disability, Retirement and Death Benefit Plan Administrative Rules III A (1991). That rule was adopted two years after the Portland City Charter provision at issue, 356 Or at 413, 413 n 6, and I do not suggest that voters would have understood the text with this particular administrative rule in mind. Rather, the administrative rule illustrates the general and common sense purpose of disability plans, which the voters likely would have had in mind just two years earlier. The majority too quickly dismisses this administrative rule as irrelevant. See Halperin v. Pitts, 352 Or 482, 490-91, 287 P3d 1069 (2012) (collecting cases to show that mere fact that statutes were later-enacted did “not mean that they [were] irrelevant”).