Argued and submitted October 7, 2021, reversed and remanded
February 9, petition for review denied June 2, 2022 (369 Or 785)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRAVIS LEE BRADY,
*Defendant-Appellant.*

Washington County Circuit Court
19CR31931; A173201

506 P3d 1180

Defendant appeals a judgment of conviction—by a 10-2 jury—for one count of first-degree theft, ORS 164.055. Both parties agree that defendant is entitled to a reversal of the judgment because the jury was not unanimous. Defendant also appeals a denial of his motion for judgment of acquittal, contending that the evidence of his deal with the pawnshop is insufficient to permit a finding that he committed theft by "selling" a bicycle "knowing that the property was the subject of theft." The evidence at trial showed that defendant arranged for a drop loan from the pawnshop, that the period for reclaiming the bicycle had not expired when defendant was apprehended, and that defendant had a history of not reclaiming stolen property under similar arrangements. *Held*: The evidence at trial allowed a factfinder to infer that defendant disposed of the bicycle by giving it to the pawnshop in exchange for money, thereby engaging in the process of selling it, even if the sale had not yet been completed under the terms of the parties' transaction at the time defendant was apprehended. The lack of a unanimous jury verdict, however, required reversal and remand.

Reversed and remanded.

Eric Butterfield, Judge.

John Evans, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher Page, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

LAGESEN, C. J.

Reversed and remanded.

**LAGESEN, C. J.**

Defendant appeals a judgment of conviction—by a 10-2 jury—for one count of first-degree theft, ORS 164.055. The indictment alleged that defendant committed the theft by "selling" a bicycle "knowing that the property was the subject of theft." The evidence at trial showed that defendant pawned the stolen bicycle for $60, that the period for reclaiming the bicycle from the pawnshop had not expired at the time that defendant was apprehended, and that defendant had a history of pawning stolen property and not reclaiming it. On appeal, both parties agree that defendant is entitled to a reversal of the judgment because the jury was not unanimous. Defendant, however, also argues that the trial court erred in denying his motion for judgment of acquittal, contending that the evidence of his deal with the pawnshop is insufficient to permit a finding that he committed theft by "selling" the bicycle. Therefore, in defendant's view, we must reverse the conviction outright instead of reversing and remanding for a new trial. We disagree on that point and, accordingly, reverse and remand.

The relevant historical facts are not disputed. Defendant pawned a stolen bicycle in exchange for $60. Under the terms of defendant's deal with the pawnshop, the transaction was not an outright sale. Rather, it was documented as a drop loan, which gave defendant 90 days to repay the money if he wanted to reclaim the bicycle. If he did not, then the bicycle would be placed in the pawnshop's inventory. On at least three other occasions, defendant had pawned bicycles with the same shop in transactions structured the same way. Defendant never paid back the pawnshop and never reclaimed the property.

For the act of pawning the stolen bicycle for $60, the state charged defendant with one count of first-degree theft under ORS 164.055. The indictment alleged that defendant committed the crime by "selling" the stolen bicycle:

> "The defendant, on or about April 1, 2019, in Washington County, Oregon, did unlawfully and knowingly commit theft of a bicycle, the property of [the victim], by selling the property, defendant knowing that the property was the subject of theft."

Defendant exercised his right to try the case to a jury. At the close of the state's case, he moved for a judgment of acquittal. He argued that there was insufficient evidence that he committed theft by "selling" the bicycle, because the facts showed that his transaction with the pawnshop was a loan. In response, the state asserted that it was inferable from defendant's history of never reclaiming pawned property that he was not going to reclaim that bicycle and, thus, was selling the bicycle for purpose of ORS 164.055. The trial court denied the motion. Ultimately, the jury found defendant guilty by a 10-2 verdict. Defendant appeals.

As noted, it is undisputed that we must reverse defendant's conviction because the verdict was nonunanimous, in violation of defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution. *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020); *State v. Ulery*, 366 Or 500, 464 P3d 1123 (2020). What is disputed on appeal is whether the evidence is sufficient to find defendant guilty as charged with "selling" stolen property in violation of ORS 164.055. That presents a question of law, namely, whether a person who enters into a transaction like the one at issue here, under circumstances in which it is reasonably inferable that the person will not reclaim the pawned property, is "selling" property within the meaning of ORS 164.055. To answer that question of statutory construction, we consider the statute's "text, in context, and, where appropriate, legislative history and relevant canons of construction." *Chase and Chase*, 354 Or 776, 780, 323 P3d 266 (2014). The objective is "to determine the meaning of the statute that the legislature that enacted it most likely intended." *Id*. Ultimately, as we explain, we conclude that "selling" for purposes of ORS 164.055(1)(c) includes the act of disposing of property by entering into a transaction that will result in its sale, even if, as here, the evidence would not allow a finding that the sale has been finalized at the time the defendant is apprehended.

The text of ORS 164.055 provides, in relevant part, that a person commits first-degree theft if they commit "theft by receiving committed by buying, selling, borrowing or lending on the security of the property." ORS 164.055(1)(c). Pertinent to this case, "[a] person commits theft by receiving

if the person *** disposes of property of another knowing or having good reason to know that the property was the subject of theft." ORS 164.095(1). The issue, then, is whether by disposing of the bicycle in the way that he did, defendant disposed of it by "selling" it.

In defendant's view, the fact that the statute specifically prohibits "borrowing *** on the security of the property" implies that the legislature did not intend that his conduct, which was structured as a loan transaction, would qualify as "selling" the bicycle. The state, in response, points out that the ordinary meaning of the word "sell" is "'to give up (property) to another for money or other valuable consideration' and 'to give up in return for something else.'" (Quoting *Webster's Third New Int'l Dictionary* 2061 (unabridged ed 1993).) That definition, according to the state, shows that defendant engaged in "selling" when he traded the bicycle for money, especially in view of the evidence of defendant's prior conduct of not reclaiming pawned items.

The legislature did not define the word "selling" for purpose of ORS 164.055(1)(c), but the word is an ordinary one and we generally presume that the legislature intends for ordinary words to have their ordinary meanings. *State v. Jones*, 286 Or App 562, 566, 401 P3d 271 (2017). "Sell," as noted, means "to give up (property) to another for money or other valuable consideration" and "to give up in return for something else." *Webster's Third New Int'l Dictionary* 2061 (unabridged ed 2002).[1] "Selling," similarly, is defined as "the act, process, or art of offering goods for sale." *Id*. at 2062. Although those definitions are broad, and arguably could encompass some transactions—such as returning stolen merchandise to its lawful owner in exchange for money—the

---

[1] We note that the state cited the 1993 edition of *Webster's* and we have cited the 2002 edition of *Webster's*. As explained in *State v. James*, that difference in dates is immaterial for the purpose of construing statutes dating back to 1961: "Because the content of *Webster's*—excluding the addenda section—has remained static since 1961, in general, it is appropriate to treat it as a contemporaneous source for statutes dating from at least that point forward, taking into account the updates to word usage reflected in the addenda section when the circumstances so require." 266 Or App 660, 668 n 3, 338 P3d 782 (2014). Here, the operative wording of ORS 164.055(1)(c) dates to 1971. *See State v. Fonte*, 363 Or 327, 347, 422 P3d 202 (2018) (discussing history of provision).

Supreme Court has held that the term does not encompass all exchanges of goods for money. Instead, "selling" covers the giving up of stolen property for money with a third party (that is, someone other than the property's owner) "in the market for stolen goods." *State v. Fonte*, 363 Or 327, 348, 422 P3d 202 (2018).

Applying that definition here, the evidence would allow for a finding that defendant committed theft by receiving by "selling" the bicycle if it allows for the finding that he disposed of the bicycle by giving it up for money or through the process of exchanging it for money with a third party in the market for stolen goods. The evidence allows for that finding. In particular, given the evidence of defendant's prior transactions with the pawnshop, each of which resulted in defendant giving up to the pawnshop the property he hocked in exchange for the upfront payment he received, a factfinder could infer that defendant disposed of the bicycle by giving it to the pawnshop in exchange for money, thereby engaging in the process of selling it, even if the sale had not yet been completed under the terms of the parties' transaction at the time defendant was apprehended.

In arguing for a contrary result defendant, as noted, focuses on the fact that the statute separately prohibits "borrowing * * * on the security of the property." From that, he reasons that the legislature did not intend for his conduct to constitute "selling," otherwise there would be no reason for the legislature to separately mention the prohibition on borrowing.

We do not disagree with that line of argument. If the only evidence in this case was that defendant had entered the transaction that he did, it would be difficult to conclude that defendant was engaged in "selling" the stolen bicycle. That is, we agree, as a general matter, that borrowing against collateral is not the same thing as selling the collateral, and we do not think that the legislature likely viewed the conduct as the same either. The problem for defendant in this case is that the evidence of his past conduct of never coming back for the property he pawned would allow for a reasonable factfinder to find, as a factual matter, that defendant was selling the property when he gave it to the pawnshop

in exchange for money, and not simply borrowing against collateral. That the property was, in fact, stolen would reinforce that finding, to the extent it reinforces the inference that defendant was never going to return to reclaim the stolen property once he had used it to obtain cash, and that the transaction, in the end, was destined to be a sale.

Defendant also argues that it is not inferable that he was selling the bicycle because, under the terms of the parties' transaction, at the time he was apprehended, he retained the right to retrieve the bicycle and the pawnshop lacked the right to take title to the bicycle (setting aside the fact that defendant did not have title to give). But we do not read ORS 164.055(1)(c) to require a completed sale for a person to have committed the crime of theft by receiving by "selling" stolen property. The legislature opted to use the word "selling" in ORS 164.055(1)(c), a word with an ordinary meaning that embraces the notion of an ongoing process. *See Webster's* at 2062; *see also Fonte*, 363 Or at 340 (noting the defendant's argument "that the legislature's use of the gerund form [in ORS 164.055(1)(c)] suggests that it intended to refer to a defendant's continuing conduct (that is, being engaged in buying, selling, lending, or borrowing) rather than a single point in time"). That indicates to us that the legislature intended to treat as "selling" a defendant's act of disposing of property by entering into a transaction that will result in its sale, even if, as here, the evidence would not allow a finding that the sale has been finalized at the time the defendant is apprehended.

For those reasons, the trial court properly denied defendant's motion for judgment of acquittal and defendant is not entitled to an outright reversal of his conviction. As previously explained, we nevertheless must, however, reverse and remand because the jury did not unanimously agree on defendant's guilt.

Reversed and remanded.