No. 577 August 21, 2024 431

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TROY ELDON BAKER,
*Defendant-Appellant.*

Union County Circuit Court
19CR49618; A176810

Thomas B. Powers, Judge.

Argued October 3, 2023.

Nora Coon, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Conviction on Count 1 reversed and remanded for entry of conviction for second-degree theft by receiving; remanded for resentencing; otherwise affirmed.

SHORR, P. J.

Defendant appeals from his conviction for one count of first-degree theft by receiving, ORS 164.055(1)(c) (Count 1), based on his taking of multiple bags of recyclable cans from a commercial can collection site, La Grande Amusement (LGA), and redeeming the cans at a grocery store for $119.60 pursuant to Oregon's Bottle Bill. Following the denial of his motion for judgment of acquittal, defendant was found guilty in a stipulated facts trial before the court.[1] He now asserts that the trial court erred in denying his motion for judgment of acquittal, arguing that the conduct he engaged in does not constitute first-degree theft by receiving. We agree that entry of a conviction for first-degree theft by receiving was error, and reverse and remand for entry of the lesser-included crime of second-degree theft by receiving.

When a dispute on appeal centers on the meaning of a statute defining an offense, the issue before us is one of statutory construction that we review for legal error. *State v. Endicott*, 296 Or App 644, 650, 439 P3d 510, *rev den*, 365 Or 557 (2019). After resolving the meaning of the statute, we must determine whether a rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt, viewing the evidence in the light most favorable to the state. *Id.*

ORS 164.015 establishes five ways in which a person can commit "theft," including:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"* * * * *

"(5)  Commits theft by receiving as provided in ORS 164.095."

ORS 164.095 defines 'theft by receiving' as follows:

---

[1] Defendant pleaded guilty to a separate charge of second-degree theft, ORS 164.045 (Count 4), based on other conduct. He does not assign error to that conviction. Two additional counts of unlawful entry into a motor vehicle were dismissed (Counts 2 and 3).

"(1)   A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft.

"* * * * *

"(3)   'Receiving' means acquiring possession, control or title, or lending on the security of the property."

ORS 164.055 makes the crime of "theft by receiving" first-degree theft, a Class C felony, if the theft by receiving is committed by "buying, selling, borrowing or lending on the security of the property." ORS 164.055(1)(c).

The state alleged that multiple individuals stole an estimated 40 bags of cans from LGA. It further alleged that defendant then returned some of those cans to a grocery store and received a total of $119.60 for the redeemable 10 cents per can deposit. The state charged defendant with first-degree theft by receiving based on the theory that he "disposed" of the stolen cans by "selling" them to the grocery store.[2] Defendant advances two arguments in support of his assertion that his actions did not constitute felonious first-degree theft: (1) that he merely "redeemed" or received a "refund" for the cans, and did not "sell" them, and thus did not commit theft by receiving in any manner listed in ORS 164.055(1)(c); and (2) that ORS 164.055(1)(c) was only intended to elevate punishments of *subsequent* receivers of stolen property, such as fences, and not *initial* thieves, and therefore it does not apply to him. Applying *State v. Fonte*, 363 Or 327, 422 P3d 202 (2018), we conclude that the legislature did not intend first-degree theft by receiving to encompass the actions of an initial thief who subsequently sells the property that he initially stole.

In *Fonte*, the defendant took a pair of jeans from the sales floor of a department store and then took the jeans to the register to "return" them, giving the impression that he had previously purchased them. *Id.* at 329. The defendant

_____

[2] Defendant was not charged for the initial theft of the cans from LGA. However, the trial court found that "there is no doubt that [defendant] took the cans from LGA." Defendant does not contest the finding that he stole the cans from LGA, and indeed his arguments on appeal rely on his role as the initial thief.

was charged with first-degree theft by receiving for "disposing" of the stolen goods by "selling" them to the store. *Id.* at 330. The question before the Supreme Court was whether the legislature intended to punish such conduct as first-degree theft under ORS 164.055(1)(c). *Id.* at 331. The court engaged in an extensive discussion of the history of the crimes of theft and receipt of stolen property, from eighteenth-century England through the 1971 consolidation of the various crimes into their current form. *Id.* at 332-37. In attempting to discern the intent behind the legislature's designation of certain ways of committing theft as felonies, and thus subject to harsher punishment than misdemeanor theft, the court detected context clues that showed "some indication that the legislature intended to distinguish between an initial thief who takes property and a subsequent thief who receives that property." *Id.* at 342. The court further noted that "when it singled out theft by receiving for harsher punishment, the legislature had a subsequent receiver, and not an initial taker, in mind." *Id.* at 345. The court ultimately concluded that the legislative history demonstrated "a legislative intent to distinguish between theft by taking and theft by receiving and to punish the latter crime more harshly when it is committed by selling." *Id.* at 347. The court went on to note that it could also "discern a legislative intent to make that elevated crime applicable to fences—dealers in the market for stolen goods." *Id.*

We turn to the application of the law to the circumstances here. Because defendant was not a subsequent receiver in this situation, and rather was an initial thief who disposed of his ill-gotten gains for profit, we conclude that the legislature did not intend to punish his actions as felonious first-degree theft by receiving.

The state attempts to distinguish the present case from *Fonte* by emphasizing the combined factors that led to the conclusion in *Fonte*, namely that the court considered ORS 164.055(1)(c) to be inapplicable based on both the fact that the defendant was the initial thief *and* because he returned the property to its owner, rather than selling it to a third party in the market for stolen goods. The state is correct that the Supreme Court identified more than the

"initial thief" factor in concluding that the actions in *Fonte* did not constitute first-degree theft by receiving:

> "We conclude that the legislature did not intend theft by receiving committed by selling to include a theft, such as that committed in this case, that is *both* committed by an initial thief *and* committed by fraudulently returning property to its owner in accordance with the owner's return policy rather than by selling that property to a third party in the market for stolen goods. \*\*\* [B]ecause defendant was the initial thief *and* because he returned the property to its owner, rather than selling it to a third party in the market for stolen goods, that crime is not punishable as a felony under ORS 164.055(1)(c)."

*Fonte*, 363 Or at 348 (emphasis added).

The court's discussion of the terms "dispose of" and "sell" were influenced by its examination of the history of the statutes and distinctions between theft by taking and theft by receiving, and the legislature's intent to punish certain classes of thieves more harshly. *Id.* at 337-47. We read the court's extensive discussion of the theft statutes and conclusions regarding the legislative intent behind them to establish that the *Fonte* defendant's role as the initial thief would have been independently sufficient to support its conclusion that he was not subject to ORS 164.055(1)(c). Indeed, as noted, the court heavily relied on the legislature's specific intention to distinguish between the initial thief and the subsequent fencer of stolen goods and to treat the latter more harshly by treating theft by receiving under ORS 164.055(1)(c) as a felony (without regard to the value of the stolen goods). It would be inconsistent with that legislative intention in enacting that statute to conclude that defendant could be both the initial thief and the subsequent fencer of the stolen goods. Because defendant in this case was an initial thief, it is unnecessary to reach the parties' arguments regarding whether redeeming cans under the Bottle Bill constitutes "selling" for purposes of ORS 164.055(1)(c).

The parties agree that, under these circumstances, the appropriate remedy is to remand for entry of a conviction for the lesser-included crime of second-degree theft by

receiving.[3] We agree. As noted above, a person commits theft by receiving when "with intent to deprive another of property or to appropriate property to the person or to a third person" the person "receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft." ORS 164.015, ORS 164.095. Such acts constitute second-degree theft, a Class A misdemeanor, when the value of the property is $100 or more and less than $1,000. ORS 164.045. It is undisputed that defendant knew that the cans were stolen and that he disposed of them when he relinquished possession and control of them to the grocery store, with intent to appropriate the value of the 10-cent refunds to himself.

*Fonte* noted that one intent of the consolidation of the theft statutes in 1971 was to eliminate procedural hurdles to theft prosecutions by making multiple means by which the deprivation of property occurs to all constitute theft. *Fonte*, 363 Or at 333, 337. *Fonte* made clear that, after that consolidation, there is some overlap in the acts that constitute theft. *Id.* at 343 ("[I]t may be possible for the same person to commit acts that constitute more than one type of theft under ORS 164.015. *** [I]n describing theft by taking as including the act of appropriating, the legislature describes both theft by taking and theft by receiving as including the act of disposing. The terms that the legislature used to describe those two types of theft demonstrate that, at least to some extent, the acts that constitute those crimes are overlapping."). Notably, the legislative history discussed in *Fonte* that distinguished between subsequent receivers and initial thieves was specific to ORS 164.055(1)(c) and the legislature's demonstrated intent to punish fences more harshly as felons. We therefore agree with the parties that a conviction for second-degree theft by receiving is appropriate, even in light of defendant's status as the initial thief.

Conviction on Count 1 reversed and remanded for entry of conviction for second-degree theft by receiving; remanded for resentencing; otherwise affirmed.

---

[3] The parties acknowledged at oral argument that that is the proper disposition.